IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LORI LYNN MOORE,                                      Case. No. 3:16-cv-00887-CL

    Plaintiff,

                                                  OPINION AND
                                                  ORDER

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

_____

CLARKE, Magistrate Judge:

Lori Lynn Moore ("plaintiff") brings this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's application for Title XVI Supplemental Security Income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

On June 21, 2012, plaintiff protectively applied for SSI alleging disability beginning October 6, 2004. Tr. 10, 160-68. Her application was denied initially on September 17, 2012, and upon reconsideration on December 19, 2012. Tr. 10, 63-92. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 10, 110-12. On September 12, 2014, plaintiff appeared and testified at the ALJ hearing before the Honorable Kelly Wilson. Tr. 10, 27-62. An impartial vocational expert ("VE") also appeared and testified at the hearing. *Id.* On October 31, 2014, ALJ Wilson issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 7-26. The Appeals Council denied plaintiff's request for review on March 18, 2016, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff thereafter filed a complaint in this court.

## FACTUAL BACKGROUND

Born on May 7, 1964, plaintiff was 40 years old on the alleged onset date of disability and 50 years old at the time of the hearing. Tr. 31, 64, 79,160. She did not graduate from high school, but later earned her GED. Tr. 32, 76, 91. Plaintiff previously worked as an office worker, book shelver, and mail clerk. Tr. 32-34, 59, 75-76, 91. Plaintiff alleges disability beginning October 6, 2004 due to fibromyalgia, depression, panic attacks, and arthritis.[1] Tr. 10, 35-37, 64, 79.

---

[1] The ALJ noted that plaintiff had previously filed an application for Supplemental Security Income in June 2007, which was denied on December 11, 2007. Tr. 10. The ALJ wrote that "[b]y alleging an onset date of disability commencing within a previously adjudicated period, the claimant has requested, by implication, reopening and revision of the determination dated December 11, 2007." *Id.* The ALJ determined that plaintiff had not satisfied the criteria required under 20 C.F.R. § 416.1488 to reopen the prior application for benefits. *Id.* For this reason, the ALJ considered evidence from before the current application date for "background purposes only" and found it was "not an implied reopening of the claimant's earlier application for benefits."*Id.*

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation and internal quotations omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the claimant's impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Id.*; 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 21, 2012, the application date. Tr. 12. At step two, the ALJ determined that plaintiff had the following severe impairments: fibromyalgia, migraine, personality disorders, anxiety disorders, and affective disorders. *Id.* The ALJ also noted that the record contained evidence that plaintiff suffered from carpal tunnel syndrome, but found this impairment was not severe since plaintiff had not received any treatment for it during the last three years. Tr. 13. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

The ALJ continued the sequential evaluation process to determine how plaintiff's impairments affected her ability to work. The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work, but with the following exceptions:

> [S]he can perform occasional crawling and frequent balancing, stooping, kneeling, crouching, and climbing of ramps and stairs. She also cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme heat, noise, vibration, fumes, odors, dusts, gases, and hazards. She is capable of simple, routine tasks, but cannot perform detailed or complex tasks consistently. She should not work with the public. The claimant can have superficial work with coworkers in that she can be around coworkers and interact with them briefly, but she would do better in a more solitary work setting. Finally, there should be few changes in the work setting. Tr. 14.

At step four, the ALJ concluded that plaintiff could perform her past relevant work as a mail clerk. Tr. 21. Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act. Tr. 22. The ALJ did not proceed to step five.

## DISCUSSION

Plaintiff argues that the ALJ erred by: 1) improperly rejecting the medical opinions of Dr. Scott Alvord, Dr. Joshua Russell, Dr. Joseph Resendiz, and Dr. M. John Givi; 2) failing to find her impairments of arthritis, asthma, bilateral hip bursitis, and wrist pain were severe at step two; 3) improperly evaluating the lay witness statement of Christopher Fesler; 4) failing to provide a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom testimony; and 5) failing to conduct a proper step four inquiry. Pl.'s Opening Br. 5-20, Pl.'s Reply Br. 1-10.

### I.    Evaluation of the Medical Opinion Evidence

Plaintiff argues that the ALJ improperly rejected the medical opinion evidence of Dr. Scott Alvord, Dr. Joshua Russell, Dr. Joseph Resendiz, and Dr. M. John Givi. Pl.'s Opening Br. 7-12, Pl.'s Reply Br. 1-5.

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* If the treating doctor's opinion is supported by medically acceptable clinical findings and is consistent with substantial evidence in the record, controlling weight is given. *Id.* Nonetheless, an ALJ may discount a treating doctor's uncontroverted opinion by providing "clear and convincing" reasons supported by the record. *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). If the treating doctor's opinion is in dispute, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

## A. The Opinion of Dr. Scott Alvord

On August 28, 2012, Dr. Alvord performed a Psychological Consultative Examination of plaintiff. Tr. 468-75. Upon examination, Dr. Alvord noted that plaintiff reported suffering from asthma, and chronic pain. Tr. 469-70. Dr. Alvord found plaintiff was "mildly to moderately impaired" in her ability to manage household tasks and care for herself, "mildly impaired" in her ability to follow instructions, and was "mildly to moderately impaired" in her ability to concentrate, persist, and pace. Tr. 471. He also found that plaintiff had a depressed mood, flattened affect, and her long term, short term, and immediate/working memory were intact. Tr. 472. Overall, Dr. Alvord diagnosed plaintiff with posttraumatic stress disorder (chronic), bipolar

affective disorder, borderline and narcissistic personality traits, chronic pain, a history of TBI,[2] and a GAF score of 45. Tr. 473.

The ALJ gave Dr. Alvord's opinion "some weight." Tr. 20. First, the ALJ found that Dr. Alvord's opinion was "based primarily on the claimant's subjective statements and presentation, rather than the more objective evidence," which the ALJ found was not entirely credible. *Id.* Next, the ALJ found that "no treating provider [had] found [plaintiff] disabled." *Id.* Finally, the ALJ found that Dr. Alvord's examination showed "little psychological stress and relatively good mental status." *Id.*

The ALJ properly discounted the opinion of Dr. Alvord. As Dr. Alvord's medical opinion was contradicted by the medical opinions of Drs. Steven Haney and Dorothy Anderson, the ALJ was required to provide a specific and legitimate reason to discredit his medical opinion. *See Lester v. Chater*, 81 F.3d at 830-31, *see also* tr. 69-70, 73-75, 84-85, 88-90. Here, the ALJ gave specific and legitimate reasons, supported by substantial evidence to discount the medical opinion of Dr. Alvord.

First, the ALJ found that Dr. Alvord's medical opinion was based primarily on plaintiff's subjective symptom complaints, which the ALJ properly discredited, as discussed below. Tr. 20. A specific and legitimate reason to reject a physician's opinion is that it is premised on a claimant's subjective complaints, which the ALJ had properly discredited. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (It was error for the ALJ to reject a

---

[2] Here, Dr. Alvord failed to explain what the acronym TBI stood for, so this court presumes that it is the medical acronym for traumatic brain injury, based on context. *See* Center for Disease Control and Prevention, https://www.cdc.gov/traumaticbraininjury/index.html. Although Dr. Alvord failed to explain the meaning of TBI, it does not change the overall analysis.

medical opinion in the context of a psychiatric evaluation after findings the doctor's opinions were based on plaintiff's self-reports, along with more "objective measures," including a clinical interview, and mental status examination.) Here, Dr. Alvord conducted a clinical interview, which included a mental status examination and a review of the available medical records. *See* tr. 468-75. As Dr. Alvord made his findings after considering plaintiff's subjective complaints along with more "objective measures," like the clinical interview, it was error for the ALJ to discredit Dr. Alvord's medical opinion for this reason. Therefore, this was not a specific and legitimate reason for discrediting the medical opinion of Dr. Alvord.

Next, the ALJ found that Dr. Alvord's medical opinion contradicted the opinions of plaintiff's other treating providers who did not find she was disabled. Tr. 20. Contradictory medical opinions require an ALJ to provide a specific and legitimate reason to discredit a medical opinion, but the mere fact that contradictory medical opinions exist is not a specific and legitimate reason to discredit Dr. Alvord's medical opinion. *See Lester v. Chater*, 81 F.3d at 830-31.

Finally, the ALJ discredited Dr. Alvord's opinion finding that Dr. Alvord's examination showed "little psychological stress and relatively good mental status." Tr. 20. "[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Here, the ALJ noted that Dr. Alvord found plaintiff was "fully oriented and her speech was within normal limits," her long-term, short-term, and immediate/working memories were intact, she completed serial three's slowly with her hands, and could calculate five times nine and twenty-four divided by four correctly. Tr. 17, citing tr. 472-73. Additionally, the ALJ noted that Dr. Alvord found plaintiff had adequate abstract

thinking, a fund of knowledge within normal limits, and that she had an intact insight into the "nature of her condition." Tr. 17, citing tr. 473. Here, the ALJ reasonably considered Dr. Alvord's medical opinion and found it showed plaintiff had "relatively good mental status." Tr. 20. While variable interpretations of this evidence may exist, the ALJ's analysis was reasonable, such that it must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The ALJ provided at least one specific and legitimate reason to discredit Dr. Alvord's medical opinion. There is no error.

### B. The Opinion of Dr. Joshua Russell

On August 28, 2012, Dr. Russell conducted a physical consultative examination of plaintiff. Tr. 459-65. After his examination, he found that plaintiff had the following functional limitations that would last for the "at least the next 12 months": plaintiff would be able to walk and stand between four and six hours in an eight-hour workday, had no limitation in sitting during an eight-hour workday, did not need an assistive device, could lift fifty pounds occasionally and 25 pounds frequently, should never climb or balance, could stoop frequently, could kneel and crouch occasionally, and could reach, handle, finger and feel frequently. Tr. 463-64.

The ALJ gave Dr. Russell's medical opinion "some weight" finding that his overall findings were "not fully consistent with the physical examination." Tr. 20. The ALJ also noted that "[t]here was also no objective basis for the manipulative restrictions, which was even acknowledged by Dr. Russell." *Id.* It is a specific and legitimate reason to discredit a physician's opinion when the opinion is incongruent to the physician's medical records. *Tommasetti*, 533 F.3d at 1041.

Here, the ALJ's findings are supported by substantial evidence in the record. Indeed, as the ALJ noted, Dr. Russell's physical examination were not consistent with his findings. Although Dr. Russell found plaintiff was restricted in her walking and standing, he also found that plaintiff had a "normal casual gait," could walk "toe to heel without assistance," but had "some stumbles and is not able to walk quickly." Tr. 462. Also, despite finding plaintiff had manipulative limitations, he noted that she had a normal range of motion in all of her joints, which included her cervical and lumbar region, hands and wrists. *Id.* Finally, Dr. Russell found that plaintiff negative straight leg raising. *Id.*

Next, the ALJ reasonably found that Dr. Russell provided no objective basis for the manipulative restrictions he placed on plaintiff. Tr. 19-20. Indeed, Dr. Russell wrote, "I find that there is no objective evidence of weakness on her exam and therefore think that all of these [manipulative activities] could be performed reasonably frequently without limitation." Tr. 464. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghamin v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012)). For the reasons discussed above, the ALJ properly rejected the medical opinion evidence of Dr. Russell. There is no error.

C. The Opinion of Dr. Joseph Resendiz

On November 8, 2007, Dr. Resendiz performed a physical examination of plaintiff. Tr. 424-29. Dr. Resendiz diagnosed plaintiff with "osteoarthritis of the knees, left greater than right"; bursitis of left hip; and bilateral carpal tunnel syndrome; but found she did not meet the criteria for fibromyalgia, noting that she only had "6-8 out of 18 possible trigger points." Tr. 428. Based on these diagnoses, Dr. Resendiz gave plaintiff the following functional assessment:

plaintiff could stand and walk about two hours in an eight-hour workday, which was secondary to knee and hip pain; she had no restrictions on sitting during an eight-hour workday; she did not have an assistive device; she could lift or carry ten pounds frequently and twenty pounds occasionally; she had "postural limitations on bending, stooping and crouching, crawling, due to bilateral knee and hip pain"; and she had "no manipulative limitations or relevant visual, communicative, or workplace environmental limitations." Tr. 428-29.

The ALJ gave Dr. Resendiz's opinion "some weight" noting that although Dr. Resendiz found plaintiff was only capable of light work and limited her standing and walking to two out of eight hours, her overall physical examination was "unremarkable" and she "did not use an assistive device." Tr. 21. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). As the ALJ reasonably noted, Dr. Resendiz found plaintiff's physical examination was "essentially unremarkable other than the slightest limp." Tr. 428. Indeed, an independent review of the record shows Dr. Resendiz also wrote that plaintiff appeared to be a "very fit and strong female," had a negative straight leg test, and although he found it was "very likely that she does have arthritis in both knees and hips," he wrote that she "definitely does not meet the criteria" for fibromyalgia. Tr. 427-28. Overall, the ALJ provided a legally sufficient reason, supported by substantial evidence, to discredit the medical opinion of Dr. Resendiz. There is no error.

D. The Opinion of Dr. M. John Givi

Dr. Givi conducted a comprehensive psychodiagnostic examination of plaintiff on November 8, 2007. Tr. 430-36. Upon examination, Dr. Givi found that plaintiff was oriented to person, place, date, and time, that she had adequate surface level interpersonal skills, and that she

had cognitive abilities in the average range. Tr. 433. Dr. Givi also wrote that her "Verbal Abstraction skills" were "intact," she had an excellent fund of current knowledge, could recall two of three words after a 10-minute delay, could spell "world" forward and backwards, and could complete serial seven's and three's. Tr. 434. Dr. Givi also found plaintiff's Social Practical Judgment was "flawless," her mood altered between "euthymia and depression," she had coherent thought content, and her thought process and thought content was intact and rational. *Id.* He diagnosed plaintiff with major depressive disorder, recurrent, moderate; generalized anxiety disorder, (rule out); cannabis abuse; and a GAF score of 63. Tr. 436. Overall, Dr. Givi wrote that "[t]here are several barriers to employment including physical ailments and depression." *Id.*

The ALJ assessed Dr. Givi's medical opinions in two parts. First, the gave "no weight" to Dr. Givi's "speculation regarding the claimant's physical impairments precluding work" finding it was "inconsistent with the physical consultative examination" and that this finding was "beyond the scope of this examination." Tr. 21, *see also* 20 C.F.R. § 416.927(c)(5) (more weight is to be accorded to a specialist's opinion about medical issues related to their specialty area than a source who is not a specialist); *Bray*, 554 F.3d at 1228 (an ALJ need not accept opinions of any physician whose opinion is inadequately supported by clinical findings). The ALJ's finding that Dr. Givi's medical opinion was outside the scope of his examination was reasonable, given that Dr. Givi evaluated plaintiff for a psychodiagnostic examination. The ALJ gave a specific and legitimate reason for discrediting Dr. Givi's medical opinion concerning plaintiff's physical limitations. There is no error.

Next, the ALJ assessed Dr. Givi's medical opinion concerning plaintiff's mental limitations, overall giving his opinion "some weight," after finding that Dr. Givi's opinion was

Page 12 – OPINION AND ORDER

"inconsistent with the mental status examination, GAF score, and the claimant's reported daily activities." Tr. 21. Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999)). Indeed, the record shows plaintiff was capable of performing activities of daily living including doing laundry, shopping, and driving her mother long distances. *See* tr. 201-08, 452, 509.

Finally, the ALJ noted that the examination was "quite remote," and "of limited value on functioning since the current application date." Tr. 21. As discussed above, plaintiff underwent a more recent psychological examination performed by Dr. Alvord in August 2012, which the ALJ reasonably assessed. *See* tr. 468-75; *see also Youngs v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) ("When a claimant's condition is progressively deteriorating, the most recent medical report is the most probative."). The ALJ reasonably evaluated the medical evidence. There is no error.

## II.    Step Two Impairments

Next, plaintiff argues that the ALJ failed to find her arthritis, asthma, bilateral hip bursitis, and wrist pain resulting from an ulnar neuropathy versus ulnar and median neuropathy versus medication effect or metabolic disturbance and/or bilateral carpal tunnel syndrome were severe impairments at step two of the sequential evaluation process. Pl.'s Opening Br. 12-13, Pl.'s Reply Br. 5-6.

At step two of the sequential analysis, the ALJ determines whether the claimant has a medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a). A medically determinable impairment is deemed "severe" if it "significantly limits the claimant's

ability to do basic work activities." 20 C.F.R. § 416.920(a)(4)(ii).[3] Step two findings must be based upon medical evidence. *Id.* "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (*citing Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

At step two, the ALJ found plaintiff suffered from the following severe impairments: fibromyalgia, migraine, personality disorders, anxiety disorders, and affective disorders. Tr. 12. The ALJ also noted that the medical record showed evidence of carpal tunnel syndrome, but found that plaintiff had not received treatment during the last three years, and there was "no evidence of any significant limitations due to carpal tunnel syndrome." Tr. 13. Based, on this, the ALJ found plaintiff's carpal tunnel was not a severe impairment. *Id.*

Although plaintiff argues the ALJ erred by failing to find her arthritis, asthma, bilateral hip bursitis, and wrist pain were not severe impairments, this court finds that any failure to find these conditions were severe impairments is harmless. First, any alleged error is harmless because the ALJ found plaintiff had other severe impairments at step two and continued with the sequential evaluation. Tr. 20-27, *see Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's mistake is harmless where it is nonprejudicial to the claimant).

---

[3] "Basic work activities are the abilities and aptitudes necessary to do most jobs. Examples of these include -
(1)     Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)     Capacities for seeing, hearing, and speaking;
(3)     Understanding, carrying out, and remembering simple instructions;
(4)     Use of judgment;
(5)     Responding appropriately to supervision, co-workers and usual work situations; and
(6)     Dealing with changes in a routine work setting."
20 C.F.R. § 416.921(a).

Second, any error is harmless because the ALJ considered each of these impairments when completing the sequential evaluation process. *See* tr. 13-21. Here, the ALJ discussed plaintiff's arthritis, asthma, and ulnar neuropathy. *See, id.* Additionally, although the ALJ did not specifically address plaintiff's hip bursitis, she did consider and address plaintiff's physical impairments when assessing plaintiff's RFC. *Id.* Specifically, the ALJ noted plaintiff's slight limp, and that medical providers found she did not use or need an assistive device, overall noting that "the limitations in the above residual functional capacity as to lifting/carrying, postural activities, and environment should address the minimal signs/issues found on the examination related to balance and musculoskeletal tenderness." *See* tr. 13-21. This court finds the ALJ considered all of plaintiff's impairments, severe or not, at step two and when assessing her RFC. There is no error.

### III.   Lay Witness Testimony

Next, plaintiff argues that the ALJ erred by improperly evaluating the lay witness testimony of Mr. Christopher Fesler, plaintiff's roommate of twenty years. Tr. 21.

Lay testimony as to a plaintiff's symptoms is competent evidence which the ALJ must take into account. *Tobeler v. Colvin*, 749 F.3d 830, 832-34 (9th Cir. 2014), *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If the ALJ disregards such testimony, the ALJ "must give reasons that are germane to each witness." *Id.* See also *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

On July 21, 2012, Mr. Fesler completed a third party function report on plaintiff's behalf. Tr. 223-32. Mr. Fesler wrote that plaintiff suffered from agoraphobia, depression, and bipolar disorder. Tr. 223, 228, 230. He also wrote that plaintiff experienced pain that affected her abilities. Tr. 228. For example, he wrote that there were times that she would "hurt to (sic) much to move." Tr. 225. Mr. Fesler believed plaintiff's condition affects her ability to lift, squat, bend,

Page 15 – OPINION AND ORDER

stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, complete tasks, concentrate, understand, follow directions, use her hands, get along with others, and would affect her memory. Tr. 228. He also wrote that plaintiff would be able to walk one to two blocks before needing to rest, could walk three to four blocks at most, would need to take a five to ten minute break before resuming walking, and can pay attention for only a few minutes at a time. *Id.*

The ALJ discredited Mr. Fesler's lay witness statements finding that they were "not consistent with the physical and psychological examinations of record." Tr. 21. Inconsistency with medical evidence is a germane reason to discredit a lay witness's statements. *Greger*, 464 F.3d at 972. Indeed, despite Mr. Fesler's testimony that plaintiff was unable to move because of pain, his testimony was inconsistent with the medical opinion evidence of Dr. Russell who wrote that plaintiff could walk and stand between four and six hours in a workday, and the medical opinion evidence of Dr. Resendiz who found that plaintiff's physical examination was "unremarkable" and she walked with only the "slightest limp." Tr. 428, 463. This was a germane reason supported by substantial evidence to discredit Mr. Fesler's lay witness statement.

The ALJ also discredited Mr. Fesler's testimony finding that it was based on plaintiff's subjective description of her impairments, which the ALJ reasonably discredited, as further discussed below. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (One germane reason to discredit lay testimony is that it is substantially similar to a claimant's validly discredited allegations). Indeed, Mr. Fesler's testimony is substantially similar to plaintiff's testimony, which the ALJ properly discredits. There is no error.

## IV. Plaintiff's Subjective Symptom Testimony

Next, plaintiff argues that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom testimony. Pl.'s Opening Br. 15-17, Pl.'s Reply Br. 7-8.

In deciding whether to accept subjective symptom testimony, the ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

If the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918; *see also Morgan*, 169 F.3d at 599.

Here, the ALJ provided numerous clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony. First, the ALJ found there was a "complete lack of medical treatment since January 2012," noting that ""[a]side from recent treatment for a skin infection, the claimant has not had any treatment for more than two and a half years despite having health insurance." Tr. 18. The ALJ also noted that plaintiff's "failure to seek mental health treatment for such a long period of time indicates tolerable mental health symtoms (sic)." *Id.* "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2004). Additionally, "[u]nexplained, or

inadequately explained, failure to seek treatment," is a legally sufficient reason to reject a plaintiff's subjective symptom testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff argues that her lack of treatment was related to her pathology, yet the ALJ reasonably noted that plaintiff had received other treatment in the past, noting that past therapy sessions were helpful. Tr. 18, 483. Indeed, plaintiff had received treatment, including therapy, which she had commented were "worth coming to because she gets a chance to vent." Tr. 483, 485-86. This was a clear and convincing reason that the ALJ found to discredit her subjective symptom testimony.

Next, the ALJ found that plaintiff had been able to complete her past work with the "exact same personality and anxiety disorder," noting that plaintiff testified to suffering from panic attacks since she was four years old. Tr. 18. The ALJ also noted that plaintiff had been laid off from work for reasons unrelated to her impairments. *Id*; *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (A claimant's pain complaints were not credible because he reported at the administrative hearing, and also to his doctors, that he left his job because he was laid off, not because he was injured.) This is a second clear and convincing reason to discredit plaintiff's subjective symptom testimony.

Third, the ALJ noted that plaintiff had a poor overall work history and had issues of "motivation" and "secondary gain," finding that plaintiff lived with her roommate who is receiving disability payments, and she had "several applications for disability benefits." Tr. 18. The court finds this is not a clear and convincing reason to discredit plaintiff's subjective symptom testimony. *See Altorfer v. Colvin*, 2015 WL 9255544, at \*8 (D. Or. Dec 18, 2015) (quoting *Ratto v. Sec'y*, 839 F.Supp. 1415, 1428-29 (D. Or. 1993) ("If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no

claimant...would ever be found credible.")) Therefore, this is not a clear and convincing reason to discredit plaintiff's subjective symptom testimony.

Finally, the ALJ discredited plaintiff's subjective symptom testimony finding that her activities of daily living supported the RFC assessed. Tr. 18. One way a plaintiff's activities of daily living may support an adverse symptom evaluation is if the activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that plaintiff's activities of daily living, which included doing laundry, reading, sewing, shopping, socializing with others, and driving her mother long distances, supported the RFC assessment, and show that plaintiff "retains significant social and cognitive abilities." Tr. 18, citing tr. 201-08, 452, 460, 509, 515. Additionally, the ALJ found that plaintiff is physically able to perform "all of her activities of daily living," gathers cans, and eats out with her mother. Tr. 18. The ALJ reasonably found plaintiff's abilities to perform her activities of daily living supported the overall RFC assessment that plaintiff was capable of "light work," which includes "simple, routine tasks" and that she can have "superficial work with coworkers in that she can be around coworkers and interact with them briefly." Tr. 14.

Overall, the ALJ provided a number of clear and convincing reasons, supported by substantial evidence, for discrediting plaintiff's subjective symptom testimony. Therefore, the ALJ's findings concerning plaintiff's subjective symptom testimony are upheld.

## V.     Step Four Analysis

Finally, plaintiff argues that the ALJ erred by failing to conduct a proper step four analysis. Pl.'s Opening Br. 17-19, Pl.'s Reply Br. 8-9. Plaintiff makes two distinct arguments. First, plaintiff argues that the ALJ erred by relying on the VE's classification of plaintiff's bookstore job as two separate jobs: mail clerk, DOT code 209.687-026, and shelver, DOT code 249.687-

014. Pl.'s Opening Br. 18. Specifically, plaintiff argues that she performed a composite job, which has "no counterpart in the DOT," therefore, it was error for the ALJ to consider the job of mail clerk as an "independent job" that qualified as past relevant work that plaintiff could still perform at step four. Pl.'s Opening Br. 18, citing SSR 82-61.

The Commissioner argues, and this court agrees, plaintiff misconstrues the VE's findings. Def.'s Opening Br. 20. On September 12, 2014, VE Richard Hincks testified that plaintiff performed two jobs concurrently. Tr. 59. Because the job plaintiff performed was not a composite job, the VE evaluated each job separately when he was questioned by the ALJ. Tr. 59-61. Based on the RFC assessment, the ALJ reasonably determined plaintiff retained the ability to perform her past relevant work as a mail clerk, and therefore found plaintiff was not disabled. Tr. 21. The ALJ's findings are supported by substantial evidence in the record, so there is no error.

Plaintiff's second argument is that the ALJ erred by relying on the VE's testimony because the VE's responses were based on an incomplete hypothetical, arguing that if the VE evaluated plaintiff using a complete hypothetical the VE's findings would show that plaintiff was disabled. Pl.'s Opening Br. 18-19. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As, discussed above, the ALJ reasonably evaluated the medical opinion evidence, plaintiff's subjective symptom testimony, and the lay witness opinion of Mr. Christopher Fesler. As the ALJ provided legally sufficient reasons to discredit medical and lay witness opinions, and

reasonably assessed the record. this court finds the VE's hypotheticals were complete. There is no error.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and the case dismissed.

IT IS SO ORDERED.

DATED this __3__ day of January, 2018.

Mark D. Clarke
United States Magistrate Judge